**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**February 7, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **E.R., A.W., M.R., and E.W.**

**No. 19-0443** (Berkeley County 18-JA-192, 18-JA-193, 18-JA-194, and 18-JA-195)

## MEMORANDUM DECISION

Petitioner Father B.W., by counsel Nicholas Forrest Colvin, appeals the Circuit Court of Berkeley County's April 24, 2019, dispositional order terminating his parental rights to E.R., A.W., M.R., and E.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Tracy Weese, filed a response on behalf of the children, also in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in finding that he sexually abused E.R. and M.R. and denying his motion for post-termination visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2018, the DHHR filed a child abuse and neglect petition alleging that petitioner abused and neglected the children due to his daily drug use, frequent overdoses, acts of domestic violence, and sexual abuse of E.R. and M.R.[2] Specifically, the petition alleged that E.R. and M.R. disclosed to their school counselor that petitioner repeatedly entered their bedroom at

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]On appeal, petitioner failed to include the DHHR's petition in his appendix. However, the briefs filed by the parties, as well as the transcripts of the hearings below, contain sufficient details to elucidate the contents of the petition.

night and sexually touched their vaginal areas. After the petition was filed by the DHHR, petitioner waived his preliminary hearing.

In February of 2019, the circuit court held an adjudicatory hearing where petitioner stipulated to the allegations of drug abuse and domestic violence contained in the petition, but contested the allegations of sexual abuse. The circuit court accepted petitioner's stipulation and began taking testimony in regard to the sexual abuse allegations against petitioner. Petitioner testified that he worked out of town during the week but was home every weekend. Petitioner denied touching E.R. and M.R. in a sexual way, but admitted that he touched E.R. in a nonsexual way when he applied cream to her vaginal area on the rare occasion that she had a yeast infection. The children's mother testified that she believed the children's disclosures that petitioner sexually abused them.

In March of 2019, the circuit court held two more adjudicatory hearings where it continued to take testimony concerning the sexual abuse allegations contained in the petition. At the first of these two hearings, the circuit court heard testimony from the children's school counselor, a Child Protective Services ("CPS") worker, and the children's maternal grandmother. The school counselor testified that both E.R. and M.R. disclosed that petitioner repeatedly sexually abused them by touching their vaginal areas at night when they were in bed. With regard to the disclosures made by E.R., the school counselor testified that E.R. informed her in October of 2018 that she had to go to court in November to see if her half-sister, A.R., who lived with her biological father and grandmother, was going to come back and live with her.[3] Without being prompted by the school counselor, E.R. stated that A.R. was not allowed to live with her and her siblings because petitioner "played with her in a weird way." E.R. then stated that petitioner touched A.R. "down there" and pointed to her vaginal area. E.R. then disclosed that petitioner "played" with her like that, too. When the school counselor asked E.R. how often this occurred, E.R. replied, "I want you to think about every weekend that you [have] ever had in your whole life; that is how often he plays with me like that." After E.R. disclosed this information, the school counselor reported it to CPS. The school counselor further testified that in November of 2018, after E.R. returned to school from Thanksgiving break, E.R. disclosed that petitioner came into her room at night during the break, her mother caught him, and they started fighting. E.R. further disclosed more details about petitioner's touching. E.R. stated that the touching happened at night, she would take off her pants and underwear, she and petitioner were "very quiet," and petitioner would feel her and it sometimes hurt. E.R. also reported that petitioner touched her younger sister, M.R., with whom she shared a bedroom. E.R. stated that when petitioner came into their room, she was unsure if it was for her or for her sister. The school counselor again reported the disclosures to CPS. The school counselor testified that she had no concern about the truthfulness of E.R.'s disclosures and that she had no indication that E.R. had been coached in any way.

---

[3]Petitioner is not the biological father of A.R. While the petition filed by the DHHR alleged that petitioner sexually abused A.R. many years earlier, which led to her being placed in the custody of her paternal grandmother and biological father, the circuit court found that there was insufficient evidence to establish this allegation. A.R.'s paternal grandmother currently has legal guardianship of her, and A.R. is not at issue in this appeal.

With regard to the disclosure made by M.R., the school counselor testified that in December of 2018, M.R.'s teacher expressed concern to her after M.R. urinated on herself in the classroom. At M.R.'s teacher's request, the school counselor met with M.R. and used a sand table as play therapy during their session due to M.R.'s quiet and reserved personality. After the school counselor asked a general question about what M.R. was going to do after school that day, M.R. stated that she was going to play, but not with her older cousin because he hurts her.[4] After some conversation about how her cousin hurts her, M.R. pointed to the area between the legs of a play figurine and stated that she sometimes gets hurt there. When asked who hurts her there, M.R. replied "my daddy" and stated that it was "sometimes with his hand."

The CPS worker testified that she investigated both of the referrals made by the school counselor and interviewed E.R. and M.R. on two separate occasions as part of those investigations. The CPS worker stated that during her first interview with E.R. in October of 2018, they talked about body safety, and E.R. understood that there were parts of the body that others were not supposed to touch, which included the parts of the body covered by a bathing suit. When asked if anyone touched her on any of those parts of the body, E.R. replied, "dad." E.R. then disclosed that this happened a lot at nighttime, and it made her sad when it happened. E.R. also disclosed that she told her mother what happened, and E.R. expressed fear that petitioner would go to jail. The CPS worker also attempted to interview M.R., but she barely spoke during the interview. Subsequently, in November of 2018, all of the children underwent interviews at the Child Advocacy Center ("CAC"), but made no disclosures. Thereafter, the CPS worker interviewed E.R. for the second time and asked E.R. if petitioner had touched her "where her bathing suit goes," since they last spoke. E.R. responded that he had and that it happened before Thanksgiving when she was asleep. When asked how she knew this happened if she was asleep, E.R. stated because her mother came in the room and screamed at petitioner because he was "standing next to the bed with his hand in the bed." Additionally, the CPS worker asked E.R. if she remembered talking to the CAC interviewer. When E.R. responded that she remembered, the CPS worker asked E.R. why she did not talk about the same things during the CAC interview that she talked to the CPS worker about. E.R. responded because she did not want to. Thereafter, the CPS worker interviewed M.R. at school in the school counselor's room, where they played in the sand table. During this interview, M.R. picked up a figurine, pointed between its legs, and stated that her cousin punched her there. When the CPS worker asked if anyone else hurt her there, M.R. replied, "Dad." M.R. further disclosed that it happened more than once at night, it did not make her feel good, and her clothes were on when it happened.

The circuit court also heard testimony from the children's maternal grandmother, who testified that E.R. disclosed to her in July of 2018 that she did not like to wear jeans and tight clothes because her vaginal area hurt because petitioner touched her there all of the time. The children's grandmother further testified that right before Thanksgiving, E.R. disclosed to her, the children's mother, and the children's aunt, that she wanted clean underwear and pants because her vaginal area was really sore because of petitioner. While the children's grandmother testified that

---

[4]M.R. did not disclose any inappropriate touching by her cousin. After further conversation about how her cousin hurts her, M.R. responded that her cousin sometimes hits her while they are playing.

she did not like petitioner, she also stated that she would never plant "filthy thoughts" in a child's mind in order to get him in trouble.

Again, in March of 2019, the circuit court held a final adjudicatory hearing. Petitioner did not appear until the end of the hearing, but was represented by counsel. Petitioner presented no evidence or testimony, and the circuit court made a negative inference regarding his failure to respond to the allegations of sexual abuse. Additionally, the circuit court found, by clear and convincing evidence, that petitioner sexually abused E.R. and M.R. The circuit court further found that petitioner's adjudication based on sexual abuse constituted aggravated circumstances, thus the DHHR was not required to make reasonable efforts to reunify petitioner with the children.

Finally, in April of 2019, the circuit court held a dispositional hearing. The DHHR recommended termination of petitioner's parental rights based on the circuit court's finding that aggravated circumstances existed due to petitioner's sexual abuse of E.R. and M.R. The DHHR further recommended that petitioner have no post-termination visitation with the children. Petitioner moved for post-termination visitation with his children and denied that he sexually abused E.R. and M.R. On cross-examination, petitioner admitted that despite his prior admission to drug abuse, he failed to appear for drug screens, continued to abuse marijuana on a daily basis, and had last used marijuana earlier that morning. Additionally, petitioner admitted that he failed to request visits with his children at any point during the proceedings. Based on the evidence presented, the circuit court terminated petitioner's parental rights and denied petitioner's motion for post-termination visitation with the children. In its findings, the circuit court concluded that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future, that the best interests of the children required termination of petitioner's parental rights, and that post-termination visitation with petitioner was not in the best interests of the children. It is from the April 24, 2019, dispositional order that petitioner appeals.[5]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[5]According to respondents, the children's mother successfully completed an improvement period and the children were returned to her legal custody.

On appeal, petitioner first argues that the circuit court erred in finding, by clear and convincing evidence, that he sexually abused E.R. and M.R. because this finding was based solely on inadmissible hearsay evidence from the DHHR's witnesses.[6] Petitioner further argues that the circuit court's reliance on Rule 803(3) of the West Virginia Rules of Evidence to justify the admittance of the hearsay statements was in error. Although petitioner asserts these arguments, petitioner makes no reference to any objections to the same.[7] While the transcript from the March 15, 2019, adjudicatory hearing shows that petitioner stated that the DHHR's witnesses' testimony presented at the March 8, 2019, hearing likely constituted inadmissible hearsay, the transcript from the March 8, 2019, hearing shows that petitioner failed to contemporaneously object to such testimony at the time it was offered. This Court has held that

> [w]hen a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the court of a trial or an erroneous ruling by a trial court, he or she ordinarily must object then and there or forfeit any right to complain at a later time. The pedigree for this rule is of ancient vintage, and it is premised on the notion that calling an error to the trial court's attention affords an opportunity to correct the problem before irreparable harm occurs.

*State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996). Further, we have also held that

> [t]he West Virginia Rules of Evidence declare that parties must object to the wrongful offer of evidence at a particular time and with reasonable specificity. The

---

[6]As part of this assignment of error, petitioner also asserts that because the circuit court erred in finding that he sexually abused the children, the circuit court also erred in finding that aggravated circumstances existed and terminating his parental rights. However, petitioner fails to cite to any authority on aggravated circumstances or the termination of parental rights in abuse and neglect proceedings. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, *and citing the authorities relied on*, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

(Emphasis added). Accordingly, we decline to address these issues on appeal because petitioner's passing reference to them fails to comply with the applicable rules regarding appellate briefs.

[7]Petitioner's brief fails to include citations to the record that pinpoint when and how he objected to the testimony of the DHHR's witnesses below, which is in direct contravention of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure.

failure to object at the time and in the manner designated by Rule 103(a) of the West Virginia Rules of Evidence is treated as a procedural default, with the result that the evidence, even if erroneous, becomes the facts of the case. West Virginia practice imposes the same duty of diligence in regard to nonjury cases. Silence in the circuit court typically constitutes a waiver of objection. *See* W.Va.R.Evid. 103(a)(1).

*In Interest of Tiffany Marie S.*, 196 W. Va. at 234, 470 S.E.2d at 188. Moreover, "'[o]ur general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W. Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W.Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 679 S.E.2d 650 (2009). As stated above, petitioner failed to contemporaneously object to the testimony of the DHHR's witnesses at the March 8, 2019, hearing when the testimony was presented. At a subsequent hearing before the circuit court, petitioner asserted that this testimony likely constituted inadmissible hearsay, which prompted the circuit court to make the finding that the testimony fell within the hearsay exception in Rule 803(3) of the West Virginia Rules of Evidence. Although petitioner did assert that the testimony of the DHHR's witnesses was likely hearsay, this assertion was not made until seven days after the testimony was presented. Simply put, because petitioner failed to contemporaneously object to the testimony of the DHHR's witnesses at the time the testimony was offered, petitioner waived the issue on appeal and is entitled to no relief in this regard.

Finally, petitioner argues that the circuit court erred in denying his motion for post-termination visitation with the children because the circuit court failed to consider whether such visitation would be in the children's best interests.[8] We disagree.

In regard to post-termination visitation, we have previously held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

---

[8]Petitioner also argues that the circuit court ignored the testimony of the children's mother that was provided at an early hearing, which petitioner believed established that there was a bond between himself and the children. However, there is nothing in the record to indicate that the circuit court failed to consider this testimony in its conclusion that there was insufficient evidence to show that petitioner had a strong bond with the children and that post-termination visitation with petitioner was not in the children's best interests.

Syl. Pt. 11, *In re Daniel D*., 211 W. Va. 79, 562 S.E.2d 147 (2002). Here, contrary to petitioner's assertion that the circuit court failed to consider whether post-termination visitation was in the children's best interests, the circuit court found that there was insufficient evidence to support a finding that post-termination visitation was in the best interests of the children given that petitioner sexually abused E.R. and M.R. Additionally, on cross-examination, petitioner admitted that he used marijuana daily, had last used marijuana that morning, and failed to request visits with his children during the pendency of the case. Moreover, when asked why petitioner thought post-termination visitation with the children was in their best interests, petitioner was unable to articulate a reason other than because he was their father. Accordingly, we find no error in the circuit court's denial of petitioner's motion for post-termination visitation with the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 24, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 7, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison